PAUL A. PURSER AND KATHLEEN PURSER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Purser v. Commissioner
Docket No. 22774-81.
United States Tax Court
T.C. Memo 1986-181; 1986 Tax Ct. Memo LEXIS 428; 51 T.C.M. (CCH) 968; T.C.M. (RIA) 86181; May 1, 1986. *428 Perry O. Lemmons, for the petitioners. Bonnie L. Cameron, for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined deficiencies in petitioners' Federal income tax and additions to tax under section 6653(b) [1] as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b)
1973
$30,181.08
$15,090.54
1974
39,507.98
19,753.99
This Court has already held that petitioners are liable for the additions to tax imposed by section 6653(b) on any deficiencies finally determined for the years at issue. [2] After concessions by the parties, the only issues remaining are whether petitioners received additional unreported income of $23,314.80 and were entitled to a $3,000 business expense deduction, both from Paul Purser's carpet installation business and both for the year 1974. FINDINGS OF FACT The stipulation of facts and the exhibits attached thereto are incorporated herein *429 by this reference. Petitioners resided at Kennesaw, Georgia at the time they filed their petition. Petitioner, Paul A. Purser (Paul or petitioner), has been in the carpet installation business since 1969. He operated as a sole proprietorship until at least December 1973 when he formed Purser Enterprises, Inc., a Georgia corporation. However, petitioner continued to report the income and expenses of his carpet installation business on his joint individual tax returns. He never filed a Federal corporate income tax return, nor did the corporation issue stock, hold corporate meetings, or file annual reports to the state. Both parties have ignored the corporation and have continued to treat petitioner's business as a sole proprietorship through the year 1974.We will do likewise. Substantially all of petitioner's carpet installation work during the years at issue originated with Asia Rug Company (Asia Rug) a sole proprietorship, which was owned and managed by petitioner's father William H. Purser (William). Asia Rug contracted for the sale and installation of carpet. Paul did the majority of the installation, particularly in the Metro Atlanta area. Asia Rug paid petitioner for *430 his installation services either by its checks payable to him or by endorsement to him of checks payable to Asia Rug. These payments were net after any expenses such as payroll, supplies, or materials incurred by petitioner but paid by Asia Rug. Petitioner maintained no carpet inventory. His expenses of doing business were paid by Asia Rug. Petitioner had a small crew of men who helped him install carpets during the years at issue, but these men were paid by Asia Rug and all payroll accounting, including income tax and social security withholding and preparation of Forms W-2, was done by Asia Rug. Petitioner did not maintain formal books and records for his business operations as a carpet installer, but relied upon cancelled checks and check stubs to prepare his income tax returns. Asia Rug (William) maintained job order books to reflect the normal day-to-day operations of the business. The books were in William's handwriting. These books contained information regarding the location of a job, the customer, the charges for the carpet, the sales tax, and the cost of installation. The books contained periodic summaries of business activity. Although informal and not very sophisticated, *431 these books provided a reasonably accurate basis from which Asia Rug could determine the amounts due from customers and the amounts of its expenses including the amounts due to petitioner for installation work. The business books and records of Asia Rug leave quite a bit to be desired, but they were superior to the almost nonexistent records of petitioner. Respondent's agents, during the course of the tax audit, attempted to reconstruct from the records of Asia Rug and from bank records available to them the proper amount of petitioner's income for the years 1973 and 1974. The results served as a basis for the deficiencies determined by respondent. The parties have agreed on all deficiencies for the year 1973 and on all items but $23,314.80 of allegedly understated income and $3,000.00 of allegedly overstated expenses for the year 1974. OPINION Respondent's determinations of deficiencies in income tax are presumed to be correct and the burden of proof to overcome that presumption and to establish the correct amounts is upon petitioner. ; Rule 142(a). [3]
*432 The additional understatement of income in the amount of $23,314.80 as determined by respondent, was derived from business records maintained by William, which William believed to be very accurate and which we have found not to be inaccurate, but only rather informal and unsophisticated. From these records, the total amounts due petitioner for the years 1973 and 1974 were aggregated. Respondent then subtracted the amounts paid to petitioner by Asis Rug either by its checks or by endorsement of customer's checks (which total amount was the same as the amount shown on the Form 1099 provided by Asia Rug to petitioner) and the difference was $23,314.80. Petitioner originally reported less than the amount shown on the Form 1099, but has since conceded that the total amount of the Form 1099 should have been included in his income. Respondent also determined that there was unreported income from customers of petitioner other than Asia Rug and petitioner has conceded those amounts in full so they are no longer in issue. We are concerned only with the $23,314.80 by which the amounts due to petitioner exceed the amounts paid to petitioner as shown by the records of Asia Rug. Respondent's *433 agent found two deposits in the total amount of $25,000 made to petitioner's bank accounts in early 1974 which were above and beyond the amounts shown by Asia Rug's records to have been paid to petitioner. Respondent concluded that this $25,000, which petitioner concedes came from William and/or Asia Rug, was a payment of the excess due to petitioner and accordingly, determined the $23,314.80 of additional income. Petitioner argues with respect to the $23,314.80 of additional income that the $25,000 constituted a loan made to petitioner by William for the purpose of assisting him in the purchase of a home which loan was later forgiven thus constituting a gift to petitioner. In either event, whether this was a loan or a gift, petitioner argues that it was not income. The evidence supporting the loan-gift theory is something less than conclusive and is muddied by the statements made by petitioner to the revenue agent in the course of the audit that the $25,000 was cash that he had accumulated in a shoe box over the prior half-dozen years or so, which he used to help buy his house. Petitioner conceded that he had made the earlier statements, but alleges that they were made out of *434 fear and confusion with respect to tax consequences and in his testimony at the trial stated that the loan-gift theory was what actually happened. Due to the inadequacy of petitioner's records and the informality of Asia Rug's records, it is difficult to reconstruct exactly what happened here. Respondent's agents have devoted considerable time to the reconciliation of the records available with bank deposits and the ultimate reconstruction of petitioner's income for the years at issue. Petitioner's loan-gift theory with respect to the $25,000 is rather shaky, particularly in view of the fact that no evidence was introduced to show that the $23,314.80 which was admittedly due to petitioner was in fact paid by Asia Rug at any other time or in any other form. Petitioner has not carried his burden of proving that respondent's determination was erroneous. With respect to the additional $3,000 of expenses claimed by petitioner, we also find for respondent. Petitioner has produced no check or other evidence that the $3,000 was paid. The only evidence on this subject produced by petitioner was an invoice showing the amount to be due, which is clearly different in form from all of *435 the other invoices in the record. This raises substantial questions as to the authenticity of that invoice and we find that it falls far short of establishing the $3,000 expense claimed by petitioner. Again, petitioner has failed to meet his burden of proof. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. .↩
3. All references to Rules are to the Tax Court Rules of Practice and Procedure.↩